# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>Scenic View Properties, LLC,<br><br>          Debtor. | Bankruptcy No. 11-60236 |
| Neighborhood National Bank,<br><br>          Plaintiff,<br><br>v.<br><br>TW Construction Solutions, LLC;<br>Nybberg Surveying, Inc.;<br>TSI Real Estate, LLC;<br>Torrey Westrom;<br>Hill Hiker, Inc.; and<br>Wayne Fredin d/b/a Fredins House<br>Services,<br><br>          Defendant. | Adversary No. 12-6022 |
| TW Construction Solutions, LLC,<br><br>          Appellant,<br><br>v.<br><br>Neighborhood National Bank,<br><br>          Appellee. | Civil No. 12-1941 (DWF)<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

**INTRODUCTION**

This matter is before the Court on Defendant-Appellant TW Construction Solutions, LLC's ("TWCS") appeal from the June 26, 2012 Order denying TWCS's Motion to Vacate Default Judgment of United States Bankruptcy Judge Dennis D. O'Brien ("Default Order") (Doc. No. 1) in the adversary proceeding entitled *Neighborhood National Bank v. TW Construction Solutions, LLC, et al.*, Adv. No. 12-6022. (Doc. No. 4, Appellant's Appendix, ("App.") at 173.)[1] TWCS asks this Court to reverse the Bankruptcy Court, vacate the default judgment entered against TWCS, and remand the case for further proceedings. Neighborhood National Bank ("the Bank") urges this Court to affirm the Default Order and the default judgment entered against TWCS. For the reasons set forth below, the Court reverses and vacates the Default Order and remands the case for further proceedings.

**BACKGROUND**[2]

In August 2002, the debtor in the underlying bankruptcy action, Scenic View Properties, LLC ("SVP"), bought the Scenic View Trailer Park located in Alexandria, Minnesota, ("the Property") on a contract for deed. SVP, which is owned and controlled by Dennis Westrom, became the fee owner of the Property in June 2008 after giving a $600,000 mortgage to the Bank. Between 2006 and 2010, SVP hired several contractors,

---

[1]     For clarity, the Court cites to the relevant documents contained in the Appellant's Appendix (Doc. No. 4, ("App.")) and the Appellee's Appendix (Doc. No. 6, ("R. App.")).

[2]     Because the bankruptcy court did not examine the underlying merits of the adversary proceeding, the Court provides the facts relevant to the finding of default.

including TWCS, to perform improvements to the Property's sewage and water systems and restoration of the shoreline, landscaping, and roads in an effort to covert the Property into a campground and RV resort ("the Project"). TWCS is purportedly an unincorporated sole proprietorship owned by Dennis Westrom's daughter-in-law, Tonya Westrom. Trevor Westrom, Tonya Westrom's husband, performed work for TWCS from 2006 and 2008. Trevor Westrom also served as the project manager for the improvements to the Property and planned to inject between $100,000 and $300,000 of "sweat equity" into the Project.[3]

On August 6, 2010, TWCS recorded a mechanics' lien statement against the Property for $287,844 for work it did on the Property from March 1, 2006 to August 3, 2010.[4] SVP failed to make mortgage payments and the Bank commenced a non-judicial foreclosure proceeding in November 2010. SVP filed a petition for Chapter 11 bankruptcy on March 10, 2011, which stayed the foreclosure sale.

On April 10, 2012, the Bank commenced this adversary proceeding against TWCS and five other lien holders to determine the validity and priorities of various liens relative to its mortgage on the Property. The Bank filed an unsworn certificate of service stating that it served TWCS with a copy of the summons and complaint to the attention of Trevor Westrom at addresses in Mantorville, Minnesota, and Dodge Center, Minnesota. Though

---

[3]     The parties dispute whether Trevor Westrom had an ownership interest in SVP and whether he would be considered an insider to various transactions.

[4]     The parties dispute the extent to which these improvements were visible when the Bank inspected the Property prior to the mortgage closing.

the mailing to TWCS's address in Mantorville was returned as undeliverable, the mailing to the address in Dodge Center, Minnesota, was not returned.

On Thursday, May 10, 2012, Michael E. Kreun, the Bank's counsel, received a telephone call from Trevor Westrom, which he memorialized in an e-mail to Trevor Westrom sent on the same day. The e-mail stated in its entirety:

> Pursuant to our telephone conversation this afternoon, this email will confirm:
>
> 1) I will not bring a motion for default judgment as long as you serve and file your answer by May 17, 2002.
> 2) You are looking to find an attorney, but are not currently represented by an attorney.
> 3) Due to the short scheduling order in this matter, I am unable to grant an extension on your responses to my requests for admissions, interrogatories, and requests for production of documents.
>
> I intend to schedule your deposition in this matter sometime between June 11 and June 22. Please let me know if you have any scheduling conflicts during those weeks.
>
> Finally, once you retain an attorney, please have him/her contact me right away.

(App. at 20.) Mr. Kreun did not receive a reply to his e-mail, nor was there any further communication from Trevor Westrom or anyone else purporting to act on behalf of TWCS before the May 17, 2012 deadline that the Bank imposed. Trevor Westrom does not dispute the facts memorialized in the e-mail but rather asserts that Mr. Kreun's e-mail failed to mention the Bank's refusal to grant TWCS a two-week extension to retain counsel and file an answer or that Trevor Westrom told Mr. Kreun that he disputed the Bank's claims, intended to file an answer, and "w[as] not going to lie down and let the Bank have a default." (App. at 62 ¶ 28.) Trevor Westrom asserts that he assists his wife,

4

Tonya Westrom, the sole owner of TWCS, in managing the business because his wife cares for their three children at home in addition to operating Classic Hair Cutique. (App. at 61 ¶ 26.)

When Trevor Westrom initially contacted Mr. Kreun, he was working in North Dakota and was away from his office. Westrom contends that the reason he was unable to file an answer by the original thirty-day deadline (May 10, 2012) was that he needed additional time to find an attorney capable of handling the mechanics' lien issues. He also asserts that he and his wife were "extremely busy" during that period of time. (App. at 61 ¶ 26.)

On Friday, May 18, Trevor Westrom contacted Attorney Aaron Dean, who left a voicemail for Mr. Kreun, asserting that he had been contacted by TWCS. He also requested an extension of time for serving discovery responses. Mr. Dean contends that, as of May 18, 2012, he did not know that TWCS had not yet filed an answer.

On Monday, May 21, Mr. Dean traded voicemail messages with Mr. Kreun, but was not able to reach him. At 5:00 p.m., Mr. Kreun sent Mr. Dean an e-mail acknowledging that they had exchanged voicemail messages and Mr. Dean's request for an extension of discovery deadlines. (App. at 124.) Mr. Kreun informed Mr. Dean that his client "is actually in default for failing to answer the summons and complaint" and that the Bank instructed him to file an application for default, which he would serve on TWCS. (*Id.*) He added, "We should nevertheless discuss this case when you have a chance. We need to discuss deposition scheduling in the event the court denies the default application. The court has us on a very tight scheduling order." (*Id.*) The Bank

filed an application for default judgment at 5:36 p.m.  The default application contained several paragraphs summarizing the communications between the Bank and TWCS on May 10, 18, and 21.  (App. at 18.)  Mr. Kreun's affidavit in support of the Bank's default application stated, "I traded voicemails with Mr. Dean on Monday, May 21, 2012, but I was not able to connect with him directly prior to filing this application."  (App. at 18 ¶ 8.)

The next morning, on May 22, 2012, Mr. Dean responded to Mr. Kreun's e-mail summarizing his contact with Trevor Westrom, with whom he was "in the process of establishing an attorney-client relationship."  (App. at 123.)  Specifically, Mr. Dean stated:

> File a default judgment at your client's peril.  Please understand that we will evaluate whether to seek Rule 11 sanctions against you and your client if you proceed with a default judgment motion . . . .
>
> . . .
>
> [TWCS] will be filing an Answer to the Adversary Complaint and [TWCS] denies all liability.  If you proceed with a default judgment motion on these facts, then you do so at your peril under Rule 11.
>
> In any application for a default judgment, be sure to inform the Court that you and I have traded voice-mail messages and e-mail messages and TW has already denied liability.

(*Id.*)

The Bankruptcy Court filed its Findings of Fact, Conclusions of Law, and Order for Judgment at 4:19 p.m. on May 22, 2012, making no reference to the aforementioned

communications between the Bank and TWCS on May 17, 18, or 21.[5] Judgment was

entered on the same date. To date, TWCS has not entered an answer or responded to the

Bank's discovery requests.[6]

TWCS filed a motion to vacate the default judgment ten days later on June 1,

2012. The Bankruptcy Court heard oral argument telephonically on June 26, 2012. The

Bankruptcy Court denied TWCS's motion from the bench and entered a one-page order.

In finding no excusable neglect for TWCS's failure to timely answer the complaint, the

Bankruptcy Court reasoned:

> Reorganization cases are meant to be expeditiously pursued and resolved, that's why there are deadlines in bankruptcy cases, both with respect to discovery and with respect to trial timelines that really don't exist in other types of civil litigation.
> With respect to what's at issue here, there has been nothing presented to the Court that rises to the level of an excusable neglect for failure to file an answer timely, either in the 30 days initially or in the ten-day extension and what is particularly egregious is that after the ten-day extension was granted there was silence on the part of the defendant throughout the entire additional time granted and nothing was heard until this motion after the default judgment was filed.
> This neglect was clearly without excuse that would justify now reopening this thing and getting involved in all of the substance that has been talked about here this morning. There was ample time to do that. It was the obligation of the defendant to do that. The contact by Trevor Westrom supposedly on behalf of the defendant is unpersuasive. It's not enough.
> The fact that people were busy doing other things – I am told now this morning that this is very important litigation and that there's – that there's all kinds of defenses . . . . Well, if it was that important, it was

---

[5] The bankruptcy court appears to have adopted the proposed order verbatim. (App. at 46-51; 12-6022 Doc. No. 8 at 27-31.)

[6] At the hearing, TWCS stated that if its appeal was granted, it would file an answer within two business days and would respond to the Bank's discovery requests within fourteen days.

important enough to get the answer timely filed and it was important enough to take time out of your other busy schedules, whoever was responsible for this, to make sure that counsel could be obtained at least to file an answer.

(App. at 136-37.)  The Bankruptcy Court did not make any findings as to the merits of the defenses TWCS asserts against the Bank.  The deadline to confirm SVP's reorganization plan has been extended to November 5, 2012.  (11-BR-60236 Doc. No. 117 ¶ 2.)

## DISCUSSION

### I.      Standard of Review

In an appeal from a bankruptcy proceeding, the District Court sits as an appellate court and applies the same standard as the Court of Appeals pursuant to 28 U.S.C. § 158(a) (2006).  *See Rampy v. Messerli*, 224 B.R. 701, 704 (D. Minn. 1997).  The District Court reviews the Bankruptcy Court's findings of fact for clear error and conducts a *de novo* review of the Bankruptcy Court's legal determinations.  Fed. R. Bankr. P. 8013; *see Dapec, Inc., v. Small Bus. Admin. (In re MBA Poultry, LLC)*, 291 F.3d 528, 533 (8th Cir. 2002).  Pursuant to Rule 7055 of the Federal Rules of Bankruptcy Procedure, when the Bankruptcy Court enters default, it applies the same standards in Rule 55(c) of the Federal Rules of Civil Procedure.

### II.     Order Denying Motion to Vacate Default Judgment

The Bank brought its motion for default judgment under Local Rule 7055-1 and Rule 7055 based on TWCS's failure to file an answer within the original thirty-day response period and the one-week extension.  TWCS argues that the Bankruptcy Court

abused its discretion by denying its motion to vacate the entry of default judgment because its contact with the Bank in the eleven days preceding the application for default demonstrated its good faith efforts to answer the complaint and constitutes excusable neglect. TWCS contends that its delay in answering the complaint only minimally prejudiced the Bank and that the entry of default prevents it from pursuing its meritorious defenses. The Bank asserts that the Bankruptcy Court's denial of TWCS's motion was amply justified given TWCS's failure to assert a reasonable basis for its failure to timely answer the complaint despite a one-week extension. The Bank further asserts that TWCS's defenses are without merit and that its failure to answer the complaint or respond to discovery was not in good faith and did not constitute excusable neglect.

Rule 55(c) provides that a court may grant relief from entry of default judgment for "good cause" pursuant to Rule 60(b). "When examining whether good cause exists, the district court should weigh 'whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused.'" *Stephenson v. El-Batrawi*, 524 F.3d 907, 912 (8th Cir. 2008) (quoting *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998)). Rule 60(b) allows a court to set aside a default judgment "if there is mistake, inadvertence, surprise, or excusable neglect." *United States v. 2005 Chrysler 300C*, 382 Fed. App'x 531, 532 (8th Cir. 2010). When evaluating the appropriateness of default under Rule 60(b), courts distinguish between marginal failures to comply with time requirements and "willful violations of court rules, contumacious conduct, or intentional delays." *United States v. Harre*, 983 F.2d 128, 130

(8th Cir. 1993). Default judgments are disfavored and dispositions on the merits are strongly preferred to the extreme sanction of default. *See id.* (denying motion for default where answer was filed twelve days after deadline).

The term "excusable neglect" in the default context is generally "'understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence.'" *Union Pac. R.R. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 782 (8th Cir. 2001) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 394 (1993)). To be excusable, however, the neglect must be accompanied by a showing of good faith and some reasonable basis for not complying with the rules. *Ivy v. Kimbrough*, 115 F.3d 550, 552 (8th Cir. 1997). Neither a mistake of law nor the failure to follow the clear dictates of a court rule constitutes excusable neglect. *See Ceridian Corp. v. SCSC Corp.*, 212 F.3d 398, 404 (8th Cir. 2000). In deciding whether to set aside a judgment for "excusable neglect," a district court makes an equitable decision taking into account all of the relevant circumstances surrounding the party's omission. *Id.*

It appears from the transcript of the hearing on TWCS's motion to vacate that the only factor that the Bankruptcy Court evaluated was excusable neglect. Specifically, the Bankruptcy Court found that TWCS failed to communicate with the Bank during the time between the time its answer was due and the Bank's filing of default and that "nothing was heard until this motion after the default was filed." (App. at 136.) The Bank's application for default judgment and the record before the Court demonstrates that the Bankruptcy Court's assumptions are contrary to the record before the Court.

Specifically, the parties do not dispute that Trevor Westrom[7] and Mr. Dean

contacted the Bank on at least three occasions between May 10, 2012 and May 21, 2012.

Several of these contacts were memorialized in e-mails.  Though the communications on

behalf of TWCS occurred after the deadline had passed for TWCS to timely answer the

complaint, TWCS's efforts appear to have been made in good faith.  Nothing in the

record supports a finding that TWCS's conduct was contumacious or in willful disregard

of the rules.[8]

The Court need not weigh the merits of TWCS's defenses in the adversary

proceeding because the Bankruptcy Court did not reach this issue and because the Court

finds the Bankruptcy Court's finding on excusable neglect to be reversible error.[9]

Moreover, the Bank's concerns about any prejudice resulting from the delay of TWCS's

---

[7]     The Bank's assertion that Trevor Westrom lacked the authority to act on behalf of
TWCS is undermined by the fact that its service of the complaint in this matter was
addressed to TWCS at Trevor Westrom's attention.

[8]     The absence of intentional disregard for the court's orders and rules makes this
case distinguishable from the excusable neglect cases the Bank relies upon, *In re Guidant
Corp. Implantable Defibrillators Products Liability Litigation*, 496 F.3d 863 (8th Cir.
2007) and *Noah v. Bond Cold Storage*, 408 F.3d 1043 (8th Cir. 2001).  Both *Guidant* and
*Noah* involved the entry of default judgment against parties that repeatedly disobeyed the
Federal Rules of Civil Procedure and the court's explicit orders over a period of time far
exceeding the purported delays in this case.  *Id*.

[9]     The Court need not reach the issue of which Rule 60(b) factor is most significant
or whether the Bankruptcy Court erred by considering only excusable neglect.  Even if
the Court were to rely on *Feeney v. AT & E, Inc.*, 472 F.3d 560, 563 (8th Cir. 2006) and
analyze the reason for the delay as the most important factor, its conclusion would be the
same.  Moreover, because default is disfavored based on equitable considerations, the
Court's decision would remain the same regardless of whether either party presented
additional evidence as to TWCS's efforts, or lack thereof, to retain counsel between
April 10, 2012 and May 17, 2012.

answer are largely of its own making because it waited nearly a year to file the adversary proceeding and it was unwilling to grant TWCS's reasonable request of a two-week extension to answer the complaint.[10]  The duration of the delay in this case was minimal and did not have a significant impact on the underlying bankruptcy proceeding, as the Bankruptcy Court's recent hearing date extension on other grounds demonstrates.  While the Court does not find TWCS's reason for failing to answer the complaint within the initial thirty days particularly compelling, default is a disfavored sanction for negligent delay.  Based on the record, the Court finds that a finding of excusable neglect is appropriate and that the Bankruptcy Court abused its discretion by denying TWCS's motion to vacate the default judgment.

## CONCLUSION

The Court understands the importance of expedience in resolving Chapter 11 cases, yet default judgment is nonetheless disfavored compared to judgment on the merits.  The Bankruptcy Court appears not to have considered critical facts in its order entering default based on its reasoning on the record at the hearing and written orders.  The Court respectfully finds that the Bankruptcy Court's factual error renders its excusable neglect analysis defective and justifies reversal and remand.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that TWCS's appeal from the June 26, 2012 Order Denying TW

---

[10]     Assuming that the Bank had granted TWCS the additional week it requested, TWCS would have had several additional business days after formally retaining Mr. Dean on May 21, 2012 to answer the complaint, potentially avoiding default.

Construction Solutions, LLC's Motion to Vacate Default Judgment of United States

Bankruptcy Court (Doc. No. [1]) in the adversary proceeding entitled *Neighborhood*

*National Bank v. TW Construction Solutions, LLC, et al.*, Adv. No. 12-6022 is

**GRANTED**.  The Bankruptcy Court's default order and entry of judgment (12-6022

Doc. Nos. [10], [11]) are respectfully **VACATED** as to TWCS, and the case is

**REMANDED** for further proceedings.

Dated:  October 16, 2012                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge